NOTICE

Decision filed 07/10/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240557-U

NO. 5-24-0557

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 17-CF-476 |
| | ) | |
| LATRON Y. CROSS, | ) | Honorable |
| | ) | Derek J. Girton, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the jut of the court.
Justices Vaughan and McHaney concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court properly dismissed the defendant's *pro se* petition at the first stage, where none of his claims of ineffective assistance of counsel presented an arguable basis in fact or law. The defendant failed to show that it was arguable that defense counsel's performance fell below an objective standard of reasonableness or that he was arguably prejudiced.

¶ 2   On March 25, 2024, the defendant, Latron Y. Cross, filed a *pro se* petition in the circuit court of Vermilion County seeking relief under the Post-Conviction Hearing Act. 725 ILCS 5/122-1 *et seq.* (West 2022). The petition raised several claims of ineffective assistance of trial counsel, including that defense counsel failed to investigate and call several potential alibi witnesses, failed to convey all plea offers, and failed to argue that the circuit court improperly barred the defendant from testifying about an alleged confession to the murder by another individual. On April 2, 2024,

1

the circuit court summarily dismissed the petition at the first stage. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                  I. BACKGROUND

¶ 4        In November 2018, a jury found the defendant guilty of the first degree murder of Ollie Williams. The circuit court sentenced the defendant to 59 years' incarceration in the Illinois Department of Corrections (IDOC) with a 3-year period of mandatory supervised release. On October 21, 2021, the defendant's sentence and conviction were affirmed on appeal. *People v. Cross*, 2021 IL App (4th) 190114, ¶ 3. The evidence at trial established the following. On July 7, 2017, at approximately 1 p.m., Williams was shot while riding a bicycle along Eastview Drive in Danville, Illinois. Bus driver Julie Groppi witnessed a car pull-up alongside Williams, whereupon Williams fell off his bicycle, and into a ditch. Groppi asked Williams if the car had hit him, and Williams answered, erroneously, that it had. Police later identified the car as belonging to Latina Jones, the defendant's then-girlfriend. Another bystander, Kelia Howard, called 911. In the 911 recording, Howard related to the operator that Williams had identified the defendant as his assailant.

¶ 5        Police arrived, and Officer Josh Long was the first on the scene. Officer Long testified in the State's case-in-chief. He recounted that, upon arriving at the scene, he observed Williams lying on the ground. Officer Long determined that Williams had not been hit by the vehicle but had been shot. He testified that Williams told him that the defendant was his attacker. Williams had also confirmed that only the defendant occupied the car. Later that day, Williams died of his wounds.

¶ 6        At trial, the defendant called three witnesses for his case-in-chief: the defendant himself, Naomi Cross, and Officer Long. The defendant testified that he was at his grandmother Naomi Cross's house at the time of the shooting, and that another man, Albert Gardner (deceased by the

2

time of trial), committed the murder after borrowing Jones's car. The defendant's grandmother, Naomi, testified that the defendant arrived at her house on that morning between 8:30 and 9 a.m., that Gardner borrowed the defendant's girlfriend's car at around 9:30 or 10 a.m. and did not return, and that the defendant was at her house at 1 p.m. along with several other people, leaving at around 2:30 or 3 p.m. Officer Long testified that, when he arrived at the scene of the shooting, a white female was with the wounded Williams. Officer Long spoke to this individual and learned that she was Autumn Robinson—Williams's girlfriend.

¶ 7    Before and during trial, several matters relevant to the defendant's postconviction claims arose. Three months before trial, defense counsel had his investigator, Steven Blaine, conduct interviews with individuals who could potentially support the defendant's alibi defense. Blaine spoke with Jermaine Williams. Jermaine's precise familial relationship to the defendant—if any— is unclear from the record. Regardless, he was close to the defendant and living at Naomi's house with his girlfriend on the day of the shooting. Jermaine told Blaine that he and Zakeia Flake—the defendant's cousin—were both at Naomi's house on that day. Jermaine related that the defendant arrived at Naomi's house that morning, remained there until around 2:30 p.m., and that he would be willing to testify to these facts. In his supplementary discovery disclosure, defense counsel asserted an alibi defense and identified Naomi as the alibi witness. The disclosure did not name Jermaine, nor was Jermaine ever called to testify. The investigator never interviewed Flake.

¶ 8    In a pretrial motion, defense counsel sought to admit a rap music video starring Gardner entitled "Humble." Defense counsel argued that this video served, in its lyrics, as a confession to Williams's murder, and that it was admissible, despite being hearsay, as a statement against penal interest. The circuit court denied the motion, finding that the video lacked sufficient indicia of trustworthiness.

3

¶ 9    Later in the pretrial process, the circuit court inquired about plea negotiations. Defense counsel stated on the record that the parties "have had multiple offers that have gone back and forth," and that the "last" offer was for the defendant to plead guilty to first degree murder in exchange for a sentence of 25 years' incarceration in IDOC served at 100%. Defense counsel then stated that he had conveyed all offers to the defendant. The circuit court asked the defendant whether he "hear[d] [his] attorney indicate what the last offer was in this case," whether that offer was conveyed to him, whether he understood the offer and understood that "the ultimate decision to reject or accept the plea" was his decision, and whether it was "[his] decision whether to reject the most recent plea offer." To all of these inquiries, the defendant answered "yes."

¶ 10    At trial, a similar issue arose to that litigated in the pretrial motion concerning the music video. The defendant attempted to testify that, on the day of the shooting, Gardner had confessed the murder to him. When the defendant began to recount what Gardner had allegedly told him, the State objected on hearsay grounds, and the circuit court sustained the objection. Defense counsel did not respond to the objection, nor did he argue that the testimony ought to be permitted.

¶ 11    The defendant was found guilty. Following the verdict, the defendant filed a *pro se* motion alleging ineffective assistance of counsel, including a claim arising from defense counsel's failure to call Jermaine as a witness. The circuit court denied this motion and sentenced the defendant to 59 years' incarceration . The defendant appealed to the Fourth District, which affirmed the verdict, the sentence, and the circuit court's decision to bar admission of the music video. *Cross*, 2021 IL App (4th) 190114, ¶¶ 3, 137.

¶ 12    On March 25, 2024, the defendant filed his initial *pro se* petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)). In his petition, the defendant raised three overarching claims: (1) ineffective assistance of trial counsel; (2) the denial of a fair

4

trial; and (3) ineffective assistance of appellate counsel. Attached to his petition, the defendant included, *inter alia*, trial transcripts, police reports, notarized affidavits, letters from defense counsel, and correspondence from the appellate defender.

¶ 13    As to his claims for ineffective assistance of trial counsel, the defendant's petition alleged that defense counsel: (i) failed to investigate and/or call Robinson as a witness; (ii) failed to cross-examine or adequately cross-examine State witnesses Kelia Howard, Josh Long, and Julie Groppi; (iii) failed to raise a defense of third-party guilt that Gardner acknowledged the defendant's innocence and admitted to committing the crime himself; (iv) improperly advised the defendant to reject the State's plea offer of 25 years' incarceration and promised him an acquittal; (v) failed to convey all plea offers from the State to the defendant; (vi) failed to investigate Flake as an alibi witness; (vii) failed to call Jermaine as an alibi witness; and (viii) failed to investigate or call an expert to testify on the dying-declaration and excited utterance hearsay exceptions. The balance of the defendant's petition consisted of claims that he was denied a fair trial when the circuit court permitted the jury to watch portions of a video of Groppi's bus's front-view camera, and received ineffective assistance of appellate counsel when appellate counsel did not pursue the defendant's preferred theory on appeal regarding sufficiency of the evidence, and received ineffective assistance of appellate counsel when appellate counsel failed to raise "certain plain errors from the Post-Trial Motion" on appeal.

¶ 14    In support of his petition, the defendant attached several affidavits. We limit our recitation of these affidavits to those which are relevant to this appeal. In his own affidavit, the defendant claimed that defense counsel conveyed only the State's offer of 25 years' incarceration, advised the defendant to reject it, and guaranteed him an acquittal if he went to trial. The affidavit also stated that he had informed defense counsel that both Jermaine and Flake were with him at Naomi's

house on the day of the shooting, and that later the same day, Gardner had told the defendant that Gardner had shot Williams. Flake's affidavit was similar, as it averred that both she and the defendant were at Naomi's house on the day of the shooting, and that Gardner had confessed the murder to her the following morning. Jermaine's affidavit similarly asserted that on the day of the shooting, he and the defendant were both at Naomi's house.

¶ 15 On April 2, 2024, the circuit court summarily dismissed the defendant's petition at the first stage. It determined that each of the defendant's claims for ineffective assistance of trial counsel involved matters of trial strategy within the discretion of trial counsel, and that none of trial counsel's decisions were unreasonable. As to the video-viewing claim, the circuit court found no error in allowing the jury to re-view a video already admitted into evidence, and to the extent that it was error, it was harmless. As to the plea-offer claim, the circuit court noted that the defendant acknowledged being informed of the State's offer to plead guilty for 25 years' incarceration, served at 100%, and the defendant rejected that offer on the record before proceeding to trial. As the defendant identified no offer better than the acknowledged offer, and "seem[ed] to be speculating that there may have been one," the circuit court rejected this claim.

¶ 16 The circuit court separately addressed the defendant's related complaint that defense counsel convinced him to go to trial by promising an acquittal. The circuit court reasoned that, even if the defendant's claim was true, he did not allege that he failed to understand that the decision to proceed to trial was the defendant's alone. Finally, the circuit court dismissed the defendant's two claims of ineffective assistance of appellate counsel, which alleged that appellate counsel failed to raise the defendant's other claims on direct appeal. Having found the underlying claims meritless, the circuit court concluded that appellate counsel was not ineffective for failing to raise them. This timely appeal followed.

¶ 17                                II. ANALYSIS

¶ 18    Of the claims raised in his petition, the defendant pursues four on appeal. Specifically, the defendant argues that he stated an arguable claim of ineffective assistance of trial counsel where defense counsel (1) failed to investigate Flake as a potential alibi witness; (2) failed to call Jermaine as an alibi witness; (3) failed to convey all of the State's plea offers; and (4) failed to challenge the circuit court's ruling that barred the defendant from testifying about Gardner's supposed confession to Williams's murder. The defendant does not renew his remaining claims, and we address only those raised on appeal.

¶ 19                                A. Rule of Law

¶ 20    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a statutory remedy for defendants who claim to have suffered a substantial deprivation of their constitutional rights. The Act provides for three stages of postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 26. At the first stage, relevant here, "the circuit court determines whether the petition is 'frivolous or is patently without merit.' " *Id.* The circuit court may dismiss a petition as "frivolous or patently without merit" when it has no arguable basis in either law or in fact, relying instead on "an indisputably meritless legal theory or a fanciful factual allegation." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). The circuit court should not dismiss a petition at the first stage if the defendant alleges facts sufficient to "state the gist of a constitutional claim." *People v. Allen*, 2015 IL 113135, ¶ 24. We must take all well-pled facts in the petition and supporting affidavits as true. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). We review the summary dismissal of a postconviction petition *de novo*. *Allen*, 2015 IL 113135, ¶ 19. Finally, we note that a postconviction proceeding is a collateral attack on the circuit court proceedings, not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21.

7

¶ 21    A defendant has the right to effective assistance of counsel under the sixth amendment to the United States Constitution, and under article I, section 8 of the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To determine whether a defendant has been denied his right to effective assistance of counsel, we apply the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984), and adopted by the Illinois Supreme Court in *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). Under the *Strickland* standard, the defendant must prove both that: (1) his attorney's errors were so serious as to fall below an objective standard of reasonableness; and (2) that these errors prejudiced the defendant to the point that "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Colon*, 225 Ill. 2d 125, 135 (2007) (quoting *Strickland*, 466 U.S. at 694). A "reasonable probability" of a different result is a probability sufficient to undermine confidence in the proceeding's outcome. *Strickland*, 466 U.S. at 694. To be successful on a claim for ineffective assistance of counsel, the defendant must satisfy both prongs. *Id.* at 697. While the failure to establish either prong precludes the finding of ineffective assistance of counsel, we may dispose of a claim by examining the prejudice prong alone. See *People v. Graham*, 206 Ill. 2d 465, 476 (2003).

¶ 22    In circumstances such as our own, our supreme court has combined the standard *Strickland* test with the standard for first-stage summary dismissal. See *People v. Petrenko*, 237 Ill. 2d 490, 497 (2010). Thus, "[a]t the first stage of proceedings under the Act, a petition alleging ineffective assistance of counsel may not be summarily dismissed if (i) *it is arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) *it is arguable* that the defendant was prejudiced." (Emphases added.) *Id.* (citing *Hodges*, 234 Ill. 2d at 17).

8

¶ 23                                   B. Forfeiture

¶ 24    Before proceeding with our analysis, we must address the issue of forfeiture. The State contends that the defendant's argument about Jermaine is barred by forfeiture, because the defendant failed to raise the issue on direct appeal, and because it was already litigated at the defendant's *Krankel* inquiry. See *People v. Krankel*, 102 Ill. 2d 181 (1984) (setting forth the procedure for handling ineffective assistance of counsel claims in the circuit court). We disagree.

¶ 25    Generally, in the postconviction context, "issues that could have been raised on direct appeal, but were not, are forfeited." (Internal quotation marks omitted.) *People v. Carroll*, 2026 IL 131360, ¶ 58. However, "omitting a claim in the direct appeal will not result in a forfeiture of the claim in a subsequent postconviction proceeding if the record on direct appeal did not provide the means of raising the claim." (Internal quotation marks omitted.) *Id.* Here, the defendant could not have raised this issue on direct appeal, because the direct appeal record did not contain the substance of Jermaine's proposed testimony. Moreover, as our own supreme court has repeatedly noted, ineffective assistance claims "based on what trial counsel should have done, not on what counsel did" are not precluded by forfeiture, as such matters may depend on proof "which could not have been included in the record precisely because of the allegedly deficient representation" (internal quotation marks omitted). *People v. Tate*, 2012 IL 112214, ¶ 14.

¶ 26    Further, we are persuaded by the defendant's argument that claims like this cannot be fully litigated at a *Krankel* hearing. "*Krankel* serves the narrow purpose of allowing the circuit court to decide whether to appoint independent counsel to argue a defendant's *pro se* ineffective assistance claims." *People v. Patrick*, 2011 IL 111666, ¶ 39. To hold that the *Krankel* inquiry served to litigate this issue on the merits would risk denying the defendant his sixth amendment right to counsel, as defendants proceed *pro se* in first-stage *Krankel* inquiry proceedings. See *People v. Jolly*, 2014 IL

117142, ¶ 38. In such a context, we may deny procedural default to avoid an unjust result. See *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 121 (2004). Accordingly, we reject the State's arguments for forfeiture and proceed to the merits of the defendant's claims.

¶ 27        C. Failure to Call Jermaine and Investigate Flake as Alibi Witnesses

¶ 28    The defendant raises two related claims: that defense counsel was ineffective for refusing to call Jermaine to testify as an alibi witness, and for failing to investigate Flake as a potential alibi witness. Although the parties briefed these as separate issues, our conclusion for both rests on whether either proposed testimony would have added to the defendant's alibi defense. Accordingly, we elect to address these issues together.

¶ 29    "Trial counsel's performance cannot be considered deficient because of a failure to present cumulative evidence." *People v. Henderson*, 171 Ill. 2d 124, 155 (1996). "Evidence is considered cumulative when it adds nothing to what was already before the jury." *People v. Ortiz*, 235 Ill. 2d 319, 335 (2009). Here, neither Jermaine's nor Flake's affidavit offers anything material that Naomi's testimony at trial did not already cover in greater detail. Accordingly, their proposed testimony is cumulative. When evidence is cumulative, a failure to present it generally cannot support a claim of ineffective assistance of counsel, because there is no reasonable probability that the evidence's admission would have changed the outcome of the proceedings. See *People v. Sims*, 168 Ill. 2d 176, 194 (1995). In declining to pursue Jermaine or Flake as alibi witnesses, defense counsel's performance was not arguably deficient, as both witnesses could provide only cumulative evidence.

¶ 30    The defendant seeks to avoid this conclusion by pointing to the Seventh Circuit's decision in *Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012), which stated that "[e]vidence that provides corroborating support to one side's sole witness on a central and hotly contested factual

10

issue cannot reasonably be described as cumulative." As a decision of the federal court of appeals, *Mosley* is not binding on this court, though we may consider it as persuasive authority. See *People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 127 (2001). For the reasons that follow, we do not find it persuasive here.

¶ 31    Christopher Mosley, the defendant in that case, was convicted of murder on an accountability theory arising from the arson of an apartment building in Chicago, Illinois. Mosley's lone alibi witness "was confused by the trial judge's questioning and seemed to testify (incorrectly)" about the defendant's whereabouts when the fire occurred. *Mosley*, 689 F.3d at 849. Additional witnesses, if called, would have cured that defect, by placing Mosley across the street from the apartment at the time the fire was set. *Id.* Those witnesses were also valuable for their independence, as *Mosley* relied on authority concerning "disinterested alibi witnesses [as] not subject to the same impeachment as family members." *Id.* (citing *Montgomery v. Petersen*, 846 F.2d 407, 411-15 (7th Cir. 1988)). Here, by contrast, Naomi's alibi testimony was not confusing. Further, because Flake is the defendant's cousin and Jermaine is close to the defendant, their testimony would carry the same motive to protect him that attached to Naomi's. See *Cross*, 2021 IL App (4th) 190114, ¶ 120 (finding that because Naomi was the defendant's grandmother, the jury could have concluded that she had a strong motive to lie to protect her grandson). Finally, as explained above, the testimony of Jermaine and Flake would have presented the jury with no material information which Naomi had not already provided. The proposed testimony thus lacks the independent, corroborative force contemplated in *Mosley*, and we therefore do not find this Seventh Circuit case persuasive.

¶ 32    As the proposed testimony of Jermaine and Flake was cumulative of the alibi already provided by Naomi, we find that it is not arguable that its presentation would have created the

11

reasonable probability of a different result. The defendant therefore cannot establish arguable prejudice, and the summary dismissal of these claims was proper.

¶ 33          D. Failure to Elicit Albert Gardner's Alleged Confession

¶ 34    The defendant's next claim of ineffective assistance of counsel concerns defense counsel's silence in response to the State's sustained hearsay objection, which prevented the defendant from testifying about Gardner's alleged confession to Williams's murder. The circuit court sustainment of the State's objection resulted in the exclusion of any testimony concerning Gardner's statements as hearsay.

¶ 35    " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Jan. 1, 2011). Hearsay is not admissible unless it falls within a recognized exception. Ill. R. Evid. 802 (eff. Jan. 1, 2011). One such exception is when a person makes a statement against his penal interest. Ill. R. Evid. 804(b)(3) (eff. Jan. 1, 2011). Under this exception, a statement which, at the time of its making, "so far tended to subject the declarant to *** criminal liability *** that a reasonable person *** would not have made the statement unless believing it to be true" is not admissible in a criminal case unless "corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.* However, "[g]enerally[,] an extrajudicial declaration not under oath, by the declarant, that he, and not the defendant on trial, committed the crime is inadmissible as hearsay though the declaration is against the declarant's penal interest." *People v. Bowel*, 111 Ill. 2d 58, 66 (1986). Nonetheless, "where there are sufficient indicia of trustworthiness of such extrajudicial statements, a declaration may be admissible under the statement-against-penal-interest exception to the hearsay rule." *Id.* (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).

12

¶ 36 In determining whether such indicia exist, the court should consider whether "(1) the statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and against the declarant's interest; and (4) there was adequate opportunity for cross-examination of the declarant." *Bowel*, 111 Ill. 2d at 67 (citing *Chambers*, 410 U.S. at 300-01). These indicia are guidelines, not a four-factor test of admissibility. *People v. Tenney*, 205 Ill. 2d 411, 435 (2002).

¶ 37 The defendant forwards two separate statements that he believes defense counsel should have argued provided sufficient indicia of the trustworthiness of the defendant's proposed hearsay testimony. The first statement is from the "Humble" music video, published three months after the shooting, in which Gardner performs the following lyrics: "N*** shot up Granny house. Had to hunt him down. He gone. Where he at? Body resting in the f*** ground. He gone." In a pretrial motion *in limine*, the defendant attempted to introduce the "Humble" video as a statement against Gardner's penal interests. The circuit court denied this motion, finding that the statement did not bear sufficient indicia of trustworthiness for admission under the exception. This fact alone collapses the defendant's argument for using the music video to buttress the hearsay statement's reliability. When the trial judge had previously rejected this argument, an attorney could reasonably conclude that pursuing it again would be futile, and defense counsel has no duty to pursue futile arguments. See *People v. Patterson*, 217 Ill. 2d 407, 438 (2005); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (defense counsel need not pursue defenses with little chance of success).

¶ 38 The second statement is Gardner's purported confession to Flake the day after the shooting. We acknowledge that some of the *Chambers* indicia arguably favor the defendant here: Gardner made the statement to Flake, a close acquaintance, shortly after the shooting, and that statement

13

was self-incriminating. These indicia, however, are merely guidelines, and not elements. *Tenney*, 205 Ill. 2d at 435. The fundamental question is whether the person made the statement in circumstances providing " 'considerable assurance' of its reliability by objective indicia of trustworthiness." *Bowel*, 111 Ill. 2d at 67. Here, the statement's severe lack of independent, objective, corroboration cannot be ignored. In corroboration, the defendant offers: (1) the "Humble" video, which the circuit court previously excluded as insufficiently trustworthy, and (2) another, separate confession to Flake, which Gardner allegedly made to Flake sometime after the music video was made. The lack of objective corroboration, combined with the testimony's self-serving and *post-hoc* nature, severely undermines any assurances of reliability potentially arising from the other factors. Further, there was no opportunity, let alone an adequate opportunity, for cross-examination of the declarant because Gardner was deceased.

¶ 39    The music video, as recounted, was already rejected by the circuit court, and Flake's proposed testimony—itself hearsay—finds *its* corroboration only in the defendant's self-serving testimony, the least independent of all available sources. Where the circuit court rejected the music video as insufficiently trustworthy, it is not arguable that defense counsel was unreasonable for declining to seek admission of the other statement on weaker corroboration. Defense counsel has no obligation to advance arguments which are destined to fail. See *Patterson*, 217 Ill. 2d at 438. A renewed attempt to admit Gardner's confession would have failed for the same lack of independent, objective corroboration that doomed the music video. Defense counsel's decision not to pursue this line of argument was therefore not arguably unreasonable, nor could its omission have arguably prejudiced the defendant. Accordingly, dismissal of this claim was proper.

¶ 40                                    E. Failure to Convey All Plea Offers

¶ 41    The next issue is whether the defendant raised an arguable claim of ineffective assistance

of defense counsel based on defense counsel's alleged failure to convey all the State's plea offers.

The record demonstrates that multiple plea offers were made in this case, but the defendant claims

that he received only the State's offer to plea guilty in exchange for 25 years' incarceration, served

at 100%.

¶ 42    The defendant has a right to effective counsel during plea negotiations. See *Lafler v.*

*Cooper*, 566 U.S. 156, 162 (2012). "[D]efense counsel [also] has a duty to communicate to the

defendant formal offers from the prosecution, and a failure to do so may present an arguable claim

of deficient performance." *People v. Hernandez*, 2014 IL App (2d) 131082, ¶ 15; *People v.*

*Whitfield*, 40 Ill. 2d 308, 309 (1968). However, to establish prejudice, the defendant must show

(1) a reasonable probability that he would have accepted the unconveyed offer, and (2) that the

offer would have been entered without the prosecution rescinding it or the circuit court refusing to

accept the parties' agreement. *People v. Williams*, 2016 IL App (4th) 140502, ¶ 29; *People v. Hale*,

2014 IL 113140, ¶ 19.

¶ 43    Here, the defendant's claim of ineffective assistance of counsel rests on his unsupported

and unspecific allegation that defense counsel failed to communicate additional plea offers from

the State. The defendant offers no evidence of what those offers may have been. His own affidavit

on the subject addresses only the 25-year offer, defense counsel's alleged advice to reject the offer,

and defense counsel's supposed promise of an acquittal should the defendant proceed to trial.

Moreover, to the extent that other such offers existed, the defendant's supposed ignorance of them

is contradicted by the record. On November 2, 2018, defense counsel stated to the circuit court

that the parties "had multiple offers that [went] back and forth," and that counsel has "conveyed

all of them to [the defendant]" including "[t]he last offer" of "25 years on First Degree Murder at 100 percent." When asked by the circuit court to confirm that he had received this final offer, and was rejecting it, the defendant did so without objecting to defense counsel's representation that all offers had been conveyed.

¶ 44    Even if we assume that the defendant did not receive these other offers, it is still his burden to show a reasonable probability that he would have accepted an unconveyed offer. *Hale*, 2014 IL 113140, ¶ 19. The defendant does not attempt to show this. We are instead asked to assume that the defendant, despite indisputably rejecting the State's "last offer" of 25 years, would have accepted a prior offer from the State; an offer that, reason and experience suggest, would be less favorable to the defendant than the State's final offer. We will not make this assumption. And while the defendant could perhaps have demonstrated that he would be more likely to accept a prior offer by furnishing said offer's details, he has furnished none. Even at this early stage, it is the defendant's burden to show at least an arguable claim of ineffective assistance of counsel. Merely claiming that other offers exist is not enough to carry this burden. Rather, it must be arguable that the defendant would have accepted such an offer. Without the offers before us, this is impossible to determine.

¶ 45    The defendant attempts to dodge his burden by pointing to our supreme court's decision in *People v. Hall*, 217 Ill. 2d 324 (2005), wherein the court excused the defendant's failure to provide independent corroborating documentation where "the petition contains facts sufficient to infer that the only affidavit the defendant could have furnished, other than his own sworn statement, was that of his attorney." *Id.* at 333. "The difficulty or impossibility of obtaining such an affidavit," the court noted, "is self-apparent." (Internal quotation marks omitted.) *Id.* at 333-34.

16

¶ 46    The present case is different. In *Hall*, the defendant pled specific facts about specific, confidential conversations that only his attorney could corroborate. *Id.* at 333. Here, the defendant merely avers that defense counsel mentioned "multiple offers" on the record, while his own recollection is of receiving only one offer. While *Hall* excuses a failure to corroborate certain facts, it does not relieve the defendant of his burden to plead facts that make his claim of prejudice arguable.

¶ 47    Furthermore, the prejudice inquiry does not end with the mere existence of another plea offer which the defendant would have accepted. The defendant must also show that the State would have adhered to said offer, and that the circuit court would have accepted it. *Hale*, 2014 IL 113140, ¶ 19. Analyzing this question, as with the last, demands details about some offer which the defendant did not receive. The defendant does not produce such details. We are therefore left with the defendant's bare assertion that (1) another offer existed, which the defendant did not receive; (2) which he would have accepted, despite declining the State's "last" offer of 25 years' incarceration; and finally that (3) the offer would have been entered without the prosecution rescinding it or the circuit court refusing to accept the parties' agreement. This is precisely the type of "fanciful factual allegation" which renders a petition frivolous or patently without merit. See *Hodges*, 234 Ill. 2d at 16.

¶ 48    Accordingly, the defendant's claim has no arguable basis in fact or law, and the circuit court's summary dismissal of this claim was proper.

¶ 49                                          III. CONCLUSION

¶ 50    For the foregoing reasons, we conclude that the circuit court properly dismissed the defendant's *pro se* petition at the first stage, where none of his claims of ineffective assistance of counsel presented an arguable basis in fact or in law.

17

¶ 51    Affirmed.